**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RONALD SAINTIL**, <br><br> Plaintiff, <br><br> v. <br><br> **BOROUGH OF CARTERET**, *et al.*, <br><br> Defendants. | Civil Action No. 17-433 (ZNQ) (TJB) <br><br> **OPINION** |

**QURAISHI, District Judge**

      **THIS MATTER** returns to the Court following the judgment entered by the United States Court of Appeals for the Third Circuit affirming in part and reversing and remanding in part the Court's order which granted summary judgment to Defendants Scott Crocco and Thomas O'Connor (collectively, "Defendants").[1]  (ECF No. 169.)  On remand, the Court is instructed to determine whether Defendants are entitled to qualified immunity.  (ECF No. 169-2.)

      Accordingly, Defendant Scott Crocco ("Crocco") filed a Motion for Summary Judgment based on qualified immunity.  ("Motion", ECF No. 185.)  Crocco filed a brief in support of the Motion ("Moving Br.", ECF No. 185-1) and a Statement of Material Facts ("DSOF", ECF No.

---

[1] The District Court granted summary judgment in favor of all Defendants including: the Borough of Carteret, the Borough of Carteret Police Department, Carteret Police Chief John Pieczyski, Det. Lt. Robert Wargocki, and Borough of Carteret Police Officers 1-10; Middlesex County Prosecutor's Office Sgt. James Napp, Det. Gregory Morris, and MCPO Detectives John Does 1-10; and Township of Hamilton, the Township of Hamilton Police Department, Hamilton Police Chief James Collins, Sgt. Kyle Thornton, Sgt. Terry King, Det. Lt. Joseph Mastropolo, Officer Christopher DiMeo, Officer Jonathan Woodhead, Officer Christopher Schuster, Officer David DeLeon, Officer Chester Embley, Officer David H. Leonard, Officer Mark Horan, Officer Patrick R. Guido, Officer William P. Murphy, Officer James M. Stevens, Officer Sean B. Mattis, Officer Leonard J. Gadsby, and Hamilton Township Police Officers John Does 1-10; however, this matter concerns only the Third Circuit's reversal as to Crocco and O'Connor.

1

185-3).[2]  Defendant Thomas O'Connor ("O'Connor") filed a letter motion seeking summary judgment for the same reasons articulated by Crocco.  (ECF No. 186.)  Plaintiff Ronald Saintil ("Plaintiff" or "Saintil") filed an opposition brief ("Opp'n Br.", ECF No. 192) and a Reply Statement of Material Facts ("PSOF", ECF No. 192).  Crocco filed a brief in reply ("Reply", ECF No. 195), in which O'Connor again joined (ECF No. 196).

The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **DENY** the Motions.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

The facts of this litigation pertaining to Plaintiff's arrest and the search of his property are well-known to the parties and are set forth more completely in the prior opinions of both this Court and the Third Circuit.  Civ. No. 17-433, 2022 WL 4289035 (D.N.J. Sept. 16, 2022) *(Saintil I)*; Civ. No. 22-2898, 2024 WL 3565308 (3d Cir. July 29, 2024) (*Saintil II*).  The Court will therefore only briefly summarize the relevant information for context.

In the evening on January 30, 2015, Crocco, a Middlesex County Prosecutor's Office Sergeant, and O'Connor, a Carteret Police Department Detective, and several other law enforcement officers, arrived at Plaintiff's residence in Hamilton, New Jersey, on suspicions that Plaintiff was involved in a homicide. *Saintil II*, at *1–3.  What happened next is largely in dispute.

Defendants contend that when they arrived at Plaintiff's residence (an apartment building), they observed an individual look out the window. *Saintil II*, at *10, Appendix A ¶14.  Officers then proceeded to knock on the entrance door of the apartment building.  Appendix A ¶16.  At the same time, two officers went to the back of the building.  *Id.* ¶18.  Defendants claim that "a black

---

[2] For purposes of the Motion, Crocco incorporates as his Statement of Material Facts "Appendix A" attached to the opinion issued by the Third Circuit.

2

male was observed attempting to come out that window[and] when officers yelled at him[,] he immediately slammed the window down and pulled down [the] shade." *Id.* Plaintiff contends that he heard voices coming from the rear area of his apartment building and that he saw, through his bedroom window, a white male with a gun in his hand but that he did not attempt to open the window.[3] (PSOF ¶¶44–46.) Defendants claim that officers then called Plaintiff's cell phone and "could hear a phone ringing inside the apartment" but Plaintiff did not answer.[4] *Saintil II*, at *10, Appendix A ¶19.

Defendants maintain that they knew "there [was] a black male fitting the description of [Plaintiff's] race and gender in th[e] residence" and a Jeep Grand Cherokee registered to Plaintiff was parked in front of the building which "fits the description given" of the vehicle seen at the crime scene. *Saintil II*, at *10, Appendix A ¶¶20–21. Crocco soon after applied telephonically for, and was issued, a search warrant of Plaintiff's apartment and Jeep and an arrest warrant for hindering his own apprehension, N.J. Stat. Ann. § 2C:29-3b(2) ("hindering by force").[5]

The Hamilton SWAT Team used a 60-pound battering ram to gain entry to the building and broke down Plaintiff's apartment door. (PSOF ¶¶111–112.) Police arrested Plaintiff at gunpoint. (*Id*. ¶120.) O'Connor signed the Complaint-Warrant which charged Plaintiff with hindering by force. (*Id*. ¶121.) On February 3, 2015, police arrested and charged another suspect with murder and released Plaintiff from custody on February 9, 2015. (*Id*. ¶¶138–139.) The charge against Plaintiff was ultimately dismissed in November 2015. (*Id*. ¶141.)

---

[3] Plaintiff submits that the officers arrived on scene in unmarked cars and were in plainclothes. (PSOF ¶3840.)
[4] Plaintiff contends that this was false and it would have been impossible to hear a cellphone ringing from the outside of the apartment complex, which was not close to the door to his apartment. (PSOF ¶96.)
[5] Plaintiff was ultimately charged with a different hindering offense known as hindering by destruction under N.J. Stat. Ann. § 2C:29-3b(1), not § 2C:29-3b(2).

Plaintiff filed this suit against various municipalities and individual law enforcement agencies and officers who were at the scene on the night of his arrest. As relevant here, Plaintiff alleges unlawful search and seizure, false arrest, and malicious prosecution claims against Defendants, in violation of 42 U.S.C § 1983 and the Fourth Amendment to the United States Constitution (Counts One, Three, and Four), and of the New Jersey State Constitution, the New Jersey Civil Rights Act ("NJCRA"), and the New Jersey Tort Claims Act ("NJTCA") (Counts Eight, Ten, and Eleven). Plaintiff also brought claims for vicarious liability (Count Eighteen) and joint and several liability (Count Nineteen) and sought punitive damages (Count Seventeen) and attorneys' fees and costs under 42 U.S.C. § 1988 and the NJCRA (Count Twenty). The District Court granted summary judgment in favor of Defendants on all counts. *Saintil I*, 2022 WL 4289035, at *1. Plaintiff appealed, and a divided panel of the Third Circuit affirmed in part, reversed in part, and remanded the District Court's decision.

The Third Circuit reversed in part the District Court's grant of summary judgment on the unlawful search, false arrest, and malicious prosecution claims against Defendants. First, the Third Circuit concluded that a genuine dispute of material fact exists as to whether Defendants knowingly, or with reckless disregard for the truth, made false statements and omissions that created a falsehood in their search and arrest warrant application. *Saintil II*, 2024 WL 3565308, at *3–4. The court further found that a genuine dispute exists as to whether the alleged false statements were material to the finding of probable cause to support either the search of Plaintiff's residence and vehicle and the arrest of Plaintiff for hindering. *Id.* at *4–6. The court therefore reversed the District Court's grant of summary judgment in favor of Defendants on the unlawful search and false arrest claims. As a result, the court similarly reversed the grant of summary judgment to Defendants on the malicious prosecution claim, reasoning that the claim hinged on

4

the resolution of whether there was probable cause for either the search or arrest. *Id*. at *7. The Third Circuit therefore remanded the matter back to this Court with instructions to determine whether Crocco and O'Connor are entitled to qualified immunity. *Id.* at *9.

## II. SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## III. LEGAL STANDARD

A court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). That is, the court must view all facts "in the light most favorable to the nonmoving party." *Turco*, 935 F.3d at 161.

## IV. <u>DISCUSSION</u>

Defendants seek summary judgment as to qualified immunity. (Moving Br. at 12.) Qualified immunity shields police officers from liability unless they violated clearly established rights. To determine if an officer's conduct is entitled to qualified immunity, courts ask first, "whether the defendant's conduct violated a statutory or constitutional right," and second, "whether the right at issue was clearly established when the conduct took place." *White v. City of Vineland*, 500 F. Supp. 3d 295, 304–05 (D.N.J. 2020) (citing *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018)).

For a constitutional right to be clearly established, it "must be defined with a 'high degree of specificity.'" *Dennis v. City of Phila.*, 19 F.4th 279, 288 (3d Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)); *see Summerville v. Fuentes*, Civ. No. 19-3240, 2021 WL 4129563, at *2 (3d Cir. Sept. 10, 2021). "[C]ourts are 'not to define clearly established law at a high level of generality.'" *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). To accept too broad a version of the right at issue would "convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). A court is "thus required to frame the right at issue in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition." *Id.* (cleaned up). The confines of a clearly established constitutional right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (internal quotation marks omitted); *see Summerville*, 2021 WL 4129563, at *2.

6

"[C]learly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" *James v. New Jersey State Police*, 957 F.3d 165, 170 (3d Cir. 2020) (quoting *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted); *District of Columbia. v. Wesby*, 583 U.S. 48, 63, (2018) ("The rule must be 'settled law' . . . which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" (citation omitted)).

Defendants seek summary judgment that—as of the time of the incident on January 30, 2015—it was not clearly established that their conduct was unlawful. (Moving Br. at 1, 10, 12, 17.) As Defendants succinctly put it, "[o]nly the second prong—the "clearly established" prong—is at issue in this motion." (*Id*. at 13.) Plaintiff agrees that only the second prong is at issue. (Opp. Br. at 29).

## A. DEFINING THE CONSTITUTIONAL RIGHT

The Court begins by defining the applicable constitutional right. In this context, opposing parties often take disparate positions with respect to the scope of the right at issue. Plaintiffs seek broad constructions. Defendants seek specific ones. Here, Defendants press for an extraordinarily particularized definition of the constitutional right at issue, one that they say is based on the Third Circuit's reconstructed affidavit. To that end, they assert that

> no law clearly established that . . . there was no probable cause for the search, arrest, and prosecution for Plaintiff when the facts supporting probable cause included: (1) police conducting a homicide investigation and learned Plaintiff was an ex-employee of Mocci and had previously had a dispute with Mocci so serious that Mocci said that if Plaintiff showed up at Mocci's residence, Mocci would kill Plaintiff; (2) Plaintiff drove a 1999 black Jeep Grand Cherokee, which partially matched a witness' description of a black SUV seen present outside the victim's residence the night before the victim's body was found; and (3) officers at Plaintiff's home

7

> observed suspicious conduct when they arrived at the scene: they arrived to a house with the lights on, but after they arrived and knocked the lights went out; someone matching Plaintiff's race and gender was observed both inside the apartment, and moved to open a shade and then re-enter the apartment; the occupant did not respond to the officers' knock on an exterior door, and did not answer his cell phone when called by the officers who were outside the apartment.

(Moving Br. at 12–13.)[6] The Court rejects this degree of specificity as exceeding the appropriate standard. It would be impossible to identify controlling precedent with this level of factual granularity. As the Third Circuit has aptly stated, while "the right must be defined with a high degree of specificity," "we do not require that the prior precedent have indistinguishable facts." *Dennis*, 19 F.4th at 488.

Plaintiff's proposed definition for the constitutional right at issue here hits closer to the mark. He proposes the right is "not to be arrested and charged on the basis of a perjurious warrant affidavit and without probable cause." (Opp. Br. at 30.) The Court finds that this framing, however, does not entirely capture the circumstances of this case. "Perjurious" is the adjective form of "perjury," and "[p]erjury is defined as knowingly making a false, material declaration under oath." *U.S. v. Soberon*, 929 F.2d 935, 940 citing 18 U.S.C. § 1623). Accordingly, "a perjurious warrant affidavit" only encompasses affidavits with affirmative misrepresentations but excludes ones with omissions. Here, a substantial portion of the alleged misconduct at issue in this case is the purported omission of a series of material (and exculpatory) facts from the relevant affidavit. Accordingly, to better square the constitutional right at issue in this case with its facts, the Court defines the relevant right here as follows: "the right not to be arrested and charged on

---

[6] Defendants' characterization of the affidavit demonstrates some advocacy in its selective omission of several factual issues. Insofar as the Court rejects Defendants' proposal because it is too detailed, there is no value in specifically reviewing those omissions.

the basis of an affidavit containing knowingly false statements and/or reckless omissions of material facts and without probable cause."

### B. CLEARLY ESTABLISHED

Having identified the relevant constitutional right, the Court must decide whether that right was clearly established as of January 30, 2015. There is a simple and direct answer: yes. In the context of a plaintiff alleging false arrest and malicious prosecution stemming from an affidavit that included omissions and misleading assertions, the Third Circuit has found that "there is no question that . . . the right to be free from arrest except on probable cause, was clearly established at the time of [the plaintiff's] arrest." *Andrews v. Sciulli*, 853 F.3d 690, 705 (3d Cir. 2017).[7] The plaintiff in *Andrews* was arrested on November 28, 2012. *Id.* at 696. Plaintiff in this case was arrested over two years later in January 2015. By its own terms, *Andrews* therefore constitutes controlling authority in this circuit as to the state of the law in 2015, even if it was issued after Plaintiff in this case was arrested.

The Third Circuit was not alone. Nearly every circuit court of appeals had implicitly or explicitly reached the same conclusion with respect to improper warrant applications by 2015. *See Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 97 n.7 (1st Cir. 2013) ("Though the question of whether

---

[7] The Third Circuit recently acknowledged the broad sweep of the constitutional right articulated by *Andrews*. While distinguishing the appellant's case from *Andrews*, the court took this narrower view of *Andrews*:

> To be sure, one of our past cases seemed to analyze qualified immunity at a high level of generality, stating that it is clearly established that people may not be arrested or prosecuted without probable cause. *Andrews v. Sciulli*, 853 F.3d 690, 705 (3d Cir. 2017). . . . But *Andrews* held only that the officer's violation was clear "on the record of th[at] case." *Id.* And that record—in which police had left material information out of an affidavit supporting their arrest-warrant application—was so different from this one that it cannot put the illegality of [the defendant's] conduct "beyond debate." *Id.* at 696, 703–05.

*Urda v. Sokso*, 146 F.4th 311, 314–15 (3d Cir. 2025). Still, the facts in this matter fit well within even this clarified/narrowed view of *Andrews*.

9

the Fourth Amendment provides substantive protection during the pretrial period is a question of first impression in this circuit, it cannot be seriously argued that an objectively reasonable officer in [defendants'] position would have been ignorant of the fact that fabricating evidence was constitutionally unacceptable."); *Sanseverino v. Chrostowski*, 536 F. App'x 62, 63 (2d Cir. 2013) ("[W]here an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, the shield of qualified immunity is lost.") (citation omitted); *Miller v. Prince George's Cnty., MD*, 475 F.3d 621, 632 (4th Cir. 2007) ("The law was unquestionably clearly established at the time of the events at issue here. [Defendant] had 'fair warning' that the Constitution did not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause."); *Floyd v. City of Kenner, La.*, 351 F. App'x 890, 895 (5th Cir. 2009) ("We have held that 'the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation.'") (citation omitted); *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) ("An investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest. . . . To overcome an officer's entitlement to qualified immunity, however, a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause.") (citation omitted); *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985) ("If an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he cannot be said to

have acted in an objectively reasonable manner. That a facially valid warrant will immunize only the officer who acted in an objectively reasonable manner in securing it is a principle that has been embraced by a number of courts in section 1983 actions."); *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996) ("A warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment. . . . An official who causes such a deprivation is subject to § 1983 liability.") (citations omitted); *Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir. 1995), *as amended on denial of reh'g* (Dec. 5, 1995) ("In a civil rights case, if an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, . . . he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost.") (internal quotation marks omitted); *Sperry v. Maes*, 592 F. App'x 688, 694 (10th Cir. 2014) ("[Plaintiff] is correct that this court considers material false statements and omissions negating probable cause in a warrant to be clearly established violations of the Fourth Amendment."); *Madiwale v. Savaiko*, 117 F.3d 1321, 1326–27 (11th Cir. 1997) ("Finally, we note that this circuit has previously reasoned that an officer would not be entitled to qualified immunity when 'the facts omitted . . . were . . . so clearly material that every reasonable law officer would have known that their omission would lead to a search in violation of federal law.'") (citation omitted).

    Based on the foregoing, the Court is satisfied that by January 30, 2015, it had been clearly established that Plaintiff had the right not to be arrested and charged on the basis of an affidavit containing knowingly false statements and/or reckless omissions of material facts and without probable cause.

## V. **CONCLUSION**

For the reasons stated above, the Court will **DENY** Defendants' Motions (ECF Nos. 185 and 186) seeking qualified immunity as to Plaintiff's claims for unlawful search, false arrest, and malicious prosecution. An appropriate Order will follow.


Date: September 29, 2025

                                                   s/ Zahid N. Quraishi
                                                   **ZAHID N. QURAISHI**
                                                   **UNITED STATES DISTRICT JUDGE**